**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- x

AMY HAUS, SCOTT FITZGERALD, JOHN CONNOR,
CARLOS SANCHEZ, DELAINE DOUGLAS, SARA          x
PARKEL, ABRAHAM BLAIR, WILLIAM SILVA JR.,
MELVYN STEVENS, DON BRYANT, ROBERT             x
DODDE, ADELE SPITZER, ALAIN De HALLEUX,
JASMINE DELLAL and EMILY VENIZELOS,            x
individually  and on behalf of a class of all others
similarly situated,                            x

                              Plaintiffs,          x        **CLASS ACTION**
                                                 **COMPLAINT**

   -against-                                    x        **JURY TRIAL**
                                                 **DEMANDED**

THE CITY OF NEW YORK, a municipal entity;      x
RAYMOND KELLY, New York City Police
Commissioner; GEORGE GRASSO, New York City     x
First Deputy Police Commissioner; JOSEPH ESPOSITO,
Chief of the Department, New York City Police   x
Department; MICHAEL ESPOSITO, Chief of Patrol
Borough Manhattan South, New York City Police   x
Department, NEW YORK POLICE DEPARTMENT
COMMAND OFFICERS JOHN DOE 1-10 and MARY        x
ROE 11-20; NEW YORK CITY POLICE DEPARTMENT
SUPERVISORS JOHN DOE 21-40 and MARY ROE        x
41 - 60; NEW YORK CITY POLICE OFFICER WESLEY
OTERO; NEW YORK CITY POLICE OFFICER JEFF        x
MILLENBACH; NEW YORK CITY POLICE OFFICER
KELLY, POLICE OFFICER DANIEL RYAN; NEW         x
YORK CITY DETECTIVE HANNON, Shield No. 3655;
NEW  YORK CITY POLICE OFFICERS JOHN DOE        x
61 - 100 and  MARY ROE 101-140, individually and in
their official capacities, jointly and severally    x

                              Defendants.          x

---------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

    1.    This is a civil rights action in which named plaintiffs AMY HAUS, SCOTT

FITZGERALD, JOHN CONNOR, CARLOS SANCHEZ, DELAINE DOUGLAS, SARA PARKEL,

ABRAHAM BLAIR, WILLIAM SILVA JR., MELVYN STEVENS, DON BRYANT, ROBERT DODDE, ALAIN DE HALLEUX, JASMINE DELLAL and EMILY VENIZELOS seek relief for themselves.  As to claims for arbitrary, capricious, unreasonable, unnecessary denial of access to a peaceful, public demonstration in New York City which sought to oppose the war in Iraq and which constituted protected speech and associational activity under the First and Fourteenth Amendments and which denial constituted content based and viewpoint discrimination, they also seek relief on behalf of a class of similarly situated individuals, as well as on their individual behalf, for defendants' violation, under color of state law, of their rights, privileges, and immunities secured by the Civil Rights Act of 1871, 42 U. S.C. § 1983, the First, Fourth and Fourteenth Amendments to the United States Constitution, and the Constitution and laws of the State of New York.

2.     The defendants in this action, the City of New York, a municipal entity, RAYMOND KELLY, the New York City Police Commissioner, GEORGE GRASSO, the First Deputy Police Commissioner, JOSEPH ESPOSITO, the Chief of the Department, MICHAEL ESPOSITO, Chief of Patrol Borough Manhattan South, New York City Police Officers WESLEY OTERO, JEFF MILLENBACH, POLICE OFFICER KELLY, DANIEL RYAN, New York City Detective HANNON, and New York City Command, Supervisory and Police Officers JOHN DOES and MARY ROES 1-140, individually and in their official capacities, have implemented and are continuing to enforce, encourage and sanction a policy, practice and/or custom of refusing to allow the plaintiffs and persons similarly situated to express their opposition to the foreign and military policy of the federal government of the United States as applied to the nation of Iraq.  This policy, practice and/or custom is enforced through a series of methods and techniques employed by the defendants, including, but not limited to, preventing access by persons on foot to the area of the demonstration, known to and agreed upon by the defendants City of New York, Kelly, Grasso, Joseph

Esposito and Michael Esposito.

3.        In promulgating and implementing this policy, defendants knew or should have known that on and before  February 15, 2003, many thousands of people from around the country would converge at 51st Street and 1st Avenue in New York City to demonstrate their opposition to the war in Iraq.  Defendant also knew or should have known that by blockading the streets running east/west from 42nd Street into the 60s, at 2nd and 3rd Avenues, enormous bottlenecks of thousands of demonstrators would be created, effectively trapping thousands of those demonstrators between police cordons, mounted officers and barricades on one side and thousands more demonstrators attempting to get to the demonstration site and pushing in from behind.

4.        This policy,  practice and/or custom also included the systematic use of excessive force as a method of crowd control, in particular through the use of horses, barricades and batons, the arbitrary and capricious arrests of hundreds of demonstrations without just or lawful cause, the systematic use of excessive force in the making of individual arrests and the systematic use of unreasonable and excessive handcuffing.  Further, as a part of this policy, practice or custom, defendants implemented systematic use of excessive and lengthy detention, often lasting many hours, under circumstances that amounted to cruel and inhumane treatment.  These conditions included the refusal to provide toilet facilities, the refusal to provide medical attention to those who required it, prolonged and excessive handcuffing, and prolonged, unnecessary and excessive exposure of demonstrators to severe cold weather, by keeping them handcuffed and outside for long periods of time.  Finally, there was no basis for most of the arrests that took place on that day, other than the use of mass arrests as a method of crowd control, to clear the area and to prevent the plaintiffs from expressing their opposition to war in Iraq.  All of the plaintiffs, and those similarly situated, who were arrested on February 15th,  were arrested without legal and lawful justification,     Many of the

demonstrators, including the named plaintiffs, were charged based upon the sworn statements, affidavits and warrants of New York City Police ("NYPD") officers and supervisors, including a number of the John Does and Mary Roes, who are designated as defendants herein, who lacked any personal knowledge of the circumstances of the arrests, notwithstanding their sworn statements.  As a result of defendants' actions, the plaintiffs have been harmed.  They seek declaratory damages and an award of attorneys' fees and costs.

5.     In addition to bringing the foregoing claim on behalf of themselves and all others similarly situated, the named plaintiffs herein bring claims arising out of their respective individual arrests, for false arrest, false imprisonment, malicious prosecution, malicious abuse of criminal process and excessive force.

6.     The plaintiff class seeks (i) a declaratory judgment that the policies, practices and/or customs described herein violate the First, Fourth and Fourteenth Amendments; (ii) compensatory damages for the injuries caused by defendants' unlawful conduct; (iii) punitive damages assessed against the individual defendants to deter such intentional or reckless deviations from well-settled constitutional law; (iv)  an award of attorneys' fees and costs; and (v) such other relief as this Court deems equitable and just.

## JURISDICTION

7.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of plaintiffs' constitutional and civil rights.

8.     Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

9.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 (a), (b) and (c).

## JURY DEMAND

10.     Plaintiffs demand trial by jury in this action on each and every one of their damage claims.

## PARTIES

### Named Plaintiffs

11.     Plaintiff AMY HAUS, one of the named plaintiffs representing the class, resides at 325 Bleeker Street, # 5, New York, New York 10026.

12.     Plaintiff SCOTT FITZGERALD, one of the named plaintiffs representing the class, resides at 433 Pacific Street, Brooklyn, New York 11217.

13.     Plaintiff JOHN CONNOR,  one of the named plaintiffs representing the class, resides at Tibbals Bridge NP, Madison, Connecticut 06443.

14.     Plaintiff CARLOS SANCHEZ, one of the named plaintiffs representing the class, resides at 43-30-48th Street, C-12, Sunnyside, New York 11104.

15.     Plaintiff DELAINE DOUGLAS,  one of the named plaintiffs representing the class, resides at 823 Madison Avenue, #4F, New York, New York 10021.

16.     Plaintiff SARA PARKEL, one of the named plaintiffs representing the class, resides at 183 Norman Avenue, 3rd Floor, Brooklyn, New York 11222.

17.     Plaintiff ABRAHAM BLAIR, one of the named plaintiffs representing the class, resides at 416 Martel Street, Bethlehem, Pennsylvania 18015.

18.     Plaintiff WILLIAM SILVA, Jr. , one of the named plaintiffs representing the class,

resides at 359 E. 95th Street, Apt. 2B, Brooklyn, New York 11212.

19.    Plaintiff MELVYN STEVENS,  one of the named plaintiffs representing the class, resides at 74 Charles Street, 2A, New York, New York 10014.

20.    Plaintiff DON MARLIN BRYANT, one of the named plaintiffs representing the class, resides at 4053 Akins Road, N. Royalton, Ohio 44133.

21.    Plaintiff ROBERT DODDE, one of the named plaintiffs representing the class, resides at 591 Prospect Place, #4A, Brooklyn, New York 11238.

22.    Plaintiff ADELE SPITZER, one of the plaintiffs representing the class, resides at East 17th Street, New York, New York 10003.

23.    Plaintiff ALAIN De HALLEUX, one of the named plaintiffs representing the class, 75 Grand Rue Au Bois, 1030 Bruxelles, EU.

24.    Plaintiff JASMINE DELLAL, one of the named plaintiffs representing the class, resides at 21 Bleecker Street, #3E, New York, New York, 10012.

25.    Plaintiff EMILY VENIZELOS, one of the named plaintiffs representing the class, resides at 353 Central Park West, #10, New York, New York, 10025.

### Named and Un-Named Defendants

26.    Defendant CITY OF NEW YORK (the "City") is a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

27.    Defendant RAYMOND KELLY is the current Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation,

promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

28.     Defendant GEORGE GRASSO is the current First Deputy Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

29.     Defendant JOSEPH ESPOSITO is the current Chief of Department of the NYPD, and he is  responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein.  He is sued individually and in his official capacity.

30.     Defendant MICHAEL ESPOSITO is the Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

31.     Defendant Command Officers JOHN DOE 1-10 and MARY ROE 11-20; NYPD Supervisors JOHN DOE 21-40 and MARY ROE 41 - 60; and NYPD Police Officer WESLEY OTERO, NYPD Police Officer JEFF MILLENBACH, NYPD POLICE OFFICER KELLY, NYPD Police Officer DANIEL RYAN, Detective HANNON, and NYPD Police Officers JOHN DOE 61 - 100 and MARY ROE 101-140, are New York City Police Officers who were responsible for the acts and policies that prevented the plaintiffs, and the members of the class they represent, from joining the demonstration and thereby engaging in lawfully protected and peaceful speech, protest, assembly and association on matters concerning which they desired to do so and would have so done had they not been prevented from so doing.  These defendants also were responsible for the arrests of the

plaintiffs and all of the actions and conduct associated therewith, including, *inter alia*, the unreasonable use of excessive force, the preference of charges, the approval of charges, the prosecution of the plaintiffs, the abuse of criminal process and the excessive and unnecessary detention and implementation of the challenged policy and practice in question herein. They are sued individually and in their official capacities. While the identities of most of the Command Officers, Supervisors and Police officers are, at this time unknown, based upon information and belief, some of the John Does and Mary Roes who wrongfully arrested the Plaintiff Robert Dodde and engaged in wrongful and unconstitutional conduct bore the following badge numbers, in whole or in part: #s "22777", "23879", "27038", "923...", "11868", and "24692"

32.     Defendants KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OTERO, MILLENBACH, POLICE OFFICER KELLY, RYAN, HANNON, DOES and ROES are employees and/or agents of the City of New York. They include the individuals who directed and/or authorized the prevention of the plaintiffs' expression of speech, protest, assembly and association, the use of unreasonable and excessive force, unreasonable arrests and detentions and/or who actually arrested the plaintiffs and who implemented the policies, practices and procedures to unreasonably detain the plaintiffs.

33.     At all times relevant herein, defendants KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OTERO, MILLENBACH, POLICE OFFICER KELLY, RYAN, HANNON, DOES and ROES,  have  acted under color of state law in the course and scope of their duties and functions as agents, employees, and officers of the City and/or the NYPD in engaging in the conduct described herein. At all times relevant herein, defendants have acted for and on behalf of the City and/or the NYPD with the power and authority vested in them as officers, agents and employees of the City and/or the NYPD and incidental to the lawful pursuit of their duties as officers, employees

and agents of the City and/or the NYPD.

34.     At all times herein, each defendant herein acted pursuant to the customs and policies of the defendant City of New York and the NYPD.

35.     At all times relevant herein, defendants KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OTERO, MILLENBACH, POLICE OFFICER KELLY, RYAN, HANNON, DOES and ROES have violated clearly established constitutional standards under the First, Fourth and the Fourteenth Amendments of which a reasonable police officer under the circumstances would have known.

## CLASS ACTION ALLEGATIONS

36.     Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the named plaintiffs seek one certified plaintiff class, consisting of three subclasses.  The single and overarching class consists of those persons whose rights of free expression, protest, assembly and association were denied on February 15, 2003, in violation of the First and Fourteenth Amendments to the United States Constitution, as a result of the policies and practices of the individual defendants which denied them access to the site of protest against the war in Iraq on that day.  The subclasses consist of the following persons:

a.     Those persons who were the victims of the unreasonable and excessive use of force inflicted by defendant officers and supervisors of the NYPD in the course of various police actions that day, in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution;

b.     Those persons who were arrested without probable cause and/or without legal or lawful justification on February 15, 2003 throughout mid-Manhattan for merely attempting to engage in a lawfully protected, peaceful, anti-war

demonstration, and who, in many but not all instances, were then criminally charged based upon sworn statements by NYPD officers, supervisors and commanders who had no knowledge of the circumstances of the arrests; and

      c.     Those persons who were subjected to unreasonable and excessive detentions and conditions of detention.  These conditions included, but are not limited to the following: 1) excessively tight handcuffs applied for excessive periods of time; 2) denial of food and water for excessive periods of time; 3) denial of toilet facilities for excessive periods of time; and 4) exposure to extreme cold for excessive periods of time.

37.     The members of the overall class, believed to number in the many thousands of individuals, and the members of the subclasses, believed to exceed 300, are so numerous as to render joinder impracticable.

38.     In addition, joinder is impracticable because, upon information and belief, many members of the class are not aware of the fact that their constitutional rights have been violated and that they have the right to seek redress in court.  Many members of the class are without the means to retain an attorney to represent them in a civil rights lawsuit.  Moreover, many class members who have been victimized by the Defendants' unconstitutional policies and practices do not bring individual claims.  There is no appropriate avenue for the protection of the class members' constitutional rights other than a class action.

39.     The class members share a number of questions of law and fact in common, including but not limited to the following:

      a.     Whether the defendants engaged in a policy, practice or custom whereby individuals who attempted to attend the anti-war demonstration, scheduled

to take place at 51st St. And 1st Ave. in New York City, were systematically prevented from doing so;

      b.      Whether this policy violated the First Amendment to the United States Constitution;

      c.      Whether the defendants systematically and as a matter of policy, custom and/or practice, applied "flex" handcuffs in a way whereby demonstrators, in particular the plaintiffs herein and persons similarly situated, were cuffed with excessive tightness and for excessive periods of time;

      d.      Whether the defendants systematically and as a matter of policy, custom and/or practice, detained demonstrators, in particular the plaintiffs herein and persons similarly situated, without food, water, toilet facilities and under conditions of extreme cold;

      e.      Whether the defendants systematically and as a matter of policy, custom and/or practice, arrested demonstrators, in particular the plaintiffs and persons similarly situated, without probable cause, but rather because they were in the vicinity of the anti-war demonstration and appeared to be persons who wanted to participate therein;

      f.      Whether, the use of wide scale arrests without lawful or legal justification as a mechanism for crowd control, notwithstanding the absence of any criminal conduct on the part of the arrestees, violated the First and Fourth Amendments to the United States Constitution;

      g.      Whether the defendants were motivated by a desire to prevent individuals from engaging in a lawful, peaceful demonstration against the war in Iraq

in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution;

      h.      Whether the inter-related policies and practices of the defendants as alleged herein violated the constitutional rights of class members;

40.     The claims of the named plaintiffs are typical of those of the class, with respect to the fact that at the time their constitutional rights were violated they were engaging and attempting to engage in activities protected by the First Amendment, they were the victims of excessive and unreasonable force, they were detained under conditions which were unreasonable and excessive and they were arrested without probable cause, in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution

41.     The named plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interest with members of the plaintiff class, and will fairly and adequately protect the interests of the class.

42.     The named plaintiffs are represented by the law firm of Moore & Goodman, LLP, and William Goodman and Jonathan C. Moore, both of whom are experienced civil rights lawyers who have litigated a wide range of civil rights, class action lawsuits.  Counsel for the plaintiffs have the resources, expertise, and experience to prosecute this action.  Counsel for the plaintiffs know of no conflicts among members of the class or between the attorneys and members of the class.

43.     The plaintiff class and subclasses should be certified pursuant to Rule 23(b)(3) because questions of law or fact common to the members of the class predominate over any questions affecting only individual class members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**FACTUAL ALLEGATIONS**

## **Facts Applicable to the Demonstration Class Generally**

44.    In the first days of 2003, it became clear that the United states would commence a full

scale preemptive war and full scale invasion of Iraq.  Since this was a very unusual event in U.S.

history, it was also highly controversial in the United States and throughout the world.  Therefore

anti-war groups and protesters around the world designated February 15, 2003 as a day of protest and

planned demonstrations in many countries, including the United States, opposing the impending war.

45.    One such demonstration was planned for New York City by a coalition of groups

under the umbrella of United for Peace and Justice ("UFPJ").  From the beginning it was clear that

the New York demonstration would be large, involving tens of thousands of people.  Therefore, in

mid January, UFPJ commenced negotiations with the NYPD over the terms and conditions of this

event.  UFPJ's initial proposal included a  request for an anti-war march which was to terminate at

the site of a stationary anti-war demonstration, originally  to be located at Dag Hammarskold Plaza,

located at 49th St. and 1st Ave., at the United Nations. The Defendants decided to prohibit the march

but agreed to "allow"  the  demonstration.  Ultimately, the location for the demonstration was

changed from 49th St. to 51st St. on 1st Ave.

46.    Throughout these negotiations, and leading up to the planned day for the

protest, the Defendant City of New York maintained the public position that by allowing for a

stationary demonstration, the rights of the protesters to freely express their opposition to government

were fully and completely protected.

47.    Nevertheless, because the Defendant City of New York denied UFPJ a permit to

march for the February 15th demonstration, UFPJ filed an action against the City of New York asking

that the denial of the permit to march be declared unconstitutional and that the City be enjoined from

preventing the march leading up to the demonstration.  In *United for Peace and Justice v. City of*

*New York, et al*, 243 F. Supp 2nd 19 (S.D.N.Y. 2003),  Judge Jones decided that, given the last

minute nature of the event and security concerns regarding a moving, as opposed to a stationary,

demonstration, the refusal to permit the march was a reasonable time, place and manner restriction

on freedom of expression.  This was particularly so, she ruled, reflecting the public and the legal

position of the City of New York, because the First Amendment rights of the demonstrators, in

particular the Plaintiffs and those similarly situated, were protected  by the arrangement to use 51st

St. and 1st Ave. as a site for the demonstration, available to *anyone* who might want to express

opposition to the proposed war:  "The Court finds that this alternative is reasonable because it will

allow the Plaintiff [UFPJ] ample opportunity to express its views...."  p. 29   She also specifically

noted that "the City's proposal does not limit the *number of participants* who may attend the event.

Therefore, the City's restriction 'impose[s] only a minimal inhibition on the ability of [Plaintiff] to

communicate its ideas....'" (emphasis added)

48.     On February 12, 2003, three days before the planned demonstration, This

opinion was affirmed in a unanimous opinion of a panel of the Second Circuit Court of

Appeals, which also emphasized the ability of the protesters to express themselves through

the mechanism of the stationary demonstration.

49.     On February 15, 2003, a large number of demonstrators, consisting of several

hundred thousand people, appeared in mid- Manhattan on February 15 in order to participate in the

demonstration.

50.     Notwithstanding the requirements of the Constitution of the United States,

the opinions of the District Court and of the Court of Appeals and the representations of the City of

New York and the NYPD to the courts and to the public, the policies and actions of the Defendants

severely and unreasonably denied the Plaintiffs *any* opportunity, let alone "ample opportunity to

express" their views and severely limited the number of persons allowed to "attend the event."

51.     Furthermore, the Defendants created a policy for this particular demonstration which amounted to a major and unreasonable "inhibition on the ability of [Plaintiff] to communicate its ideas....'" (emphasis added)

52.     As a matter of policy, practice and custom, defendants used the following methods to prevent the plaintiffs, and others similarly situated, from engaging in lawfully protected First Amendment activity:

        a.     Barricading, blocking and prohibiting access into and out of the east/west streets in mid-Manhattan, which fed into 1st Avenue and, consequently, into the demonstration site;

        b.     Barricading, blocking and prohibiting access into and out of the north/south avenues in mid-Manhattan, in the vicinity of 1st Avenue, and, consequently, the demonstrate site, so that demonstrators could not maneuver themselves to the demonstration site;

        c.     The aforementioned barricading, blocking and prohibition of access into and out of the aforementioned areas, also had the effect, in combination with the thousands more pouring into the aforementioned areas from behind, of trapping many thousands of people so that not only were they prevented from getting to the demonstration site, they were also prevented from leaving;

        d.     The use of horses as a method of crowd control, in such a way that the horses were used to physically assault persons who were trapped in the crowd and to terrify persons in the crowd, all in an attempt to get people to leave the area and not participate in the demonstration;

e.     The use of batons and barricades as a method of crowd control, in such a way as to physically assault persons who were trapped in the crowd, all with the intention and effect of getting people to leave the area and not participate in the demonstration;

53.   As to the members of the subclasses set forth above, the following unconstitutional, excessive and unreasonable methods were used and employed against the Plaintiffs and others similarly situated:

a.     **Excessive force** - Plaintiffs, and persons similarly situated, were subjected to excessive force in the course of attempting to protest, some in the course of arrests, and some simply as a function of their presence near the protest/demonstration site and/or their attempts to get there:

1).    unreasonable, unnecessary and excessive assaults with horses, including trampling;

2).    unreasonable, unnecessary and excessive assaults with batons and barricades;

3).    unreasonable, unnecessary and excessive assaults by means of pushing, shoving, beating, throwing, arm twisting and tackling;

4).    unreasonable, unnecessary and excessive force in the application of handcuffs, including the tightness with which they were applied and the positions in which the Plaintiffs, and those similarly situated, were placed during and, as a result of, the application of the aforementioned handcuffs;

b.    **Conditions of detention** - those plaintiffs, and others similarly situated, who were arrested were, as a matter of policy, custom and practice, subjected to the following conditions of confinement and detention, all of which were unnecessary, unreasonable and excessive:

1).    they were forced to sit and/or stand, for many hours, without the provision of toilet facilities or the opportunity to use the toilet;

2).    they were forced to sit and/or stand, for many hours, without the provision of food and/or water;

3).    they were forced to sit and/or stand, for many hours, while still painfully handcuffed to the extent, in many instances, where serious neurological injury was inflicted;

4)    they were forced to sit and/or stand, for many hours, at times outside, in severely cold conditions and were not provided proper garb, such as coats, hats and gloves.

c.    **Unreasonable arrests -** Plaintiffs, and others similarly situated were arrested, as a matter of policy, custom and practice, under circumstances which lacked probable cause, in the following ways, among others:

1)    they were arrested for doing nothing other than being present at or near the site of the anti-war protest and demonstration and/or for attempting to get there;

2)    they were arrested for failure to disperse, despite the fact that they were unable to move, as a result the actions and policies

of the Defendants;

3)      they were arrested for failure to leave areas of street and/or

sidewalk, despite the fact that they were unable to move, as a

result of the actions and policies of the Defendants;

4)      they were arrested because they refused to leave the area, and

go home, as ordered by the police, despite the fact that they

had a right under the Constitution and laws of the United

States and the State of New York to be present at the

protest/demonstration site;

5)      they were arrested pursuant to warrants, summons, DATs and

sworn statements of John Doe commanders, supervisors and

officers who had no knowledge, let alone personal

knowledge, of the circumstances of their arrests;

6)      for each arrested plaintiff, and others similarly situated, there

was a favorable disposition of the criminal charges arising

from the aforementioned arrests.

### Facts Applicable to the Named Plaintiffs

54.     Plaintiff AMY HAUS:  On February 15, 2003, while attempting to attend the

demonstration, plaintiff was prevented by New York City Police Officers, for several hours, from

accessing the demonstration which was located along 1st Avenue.  She arrived at 42nd Street and 7th

Avenue, in the early afternoon.  She, with friends, walked toward 1st Avenue and 51st Street. The

plaintiff and her friends were denied access to the demonstration on 1st Avenue as they tried to get

to the demonstration at several east/west cross streets, as a result of tactics, which were part of the

policies of the Defendants CITY OF NEW YORK, KELLY, GRASSO JOSEPH ESPOSITO and MICHAEL ESPOSITO.  At approximately 2:30 p.m., on or about 51st Street and 2nd Avenue, while standing and talking to fellow demonstrators, the plaintiff, without warning, was suddenly rushed by mounted police and police in riot gear.  The plaintiff was shoved to the ground and trampled on her upper thighs by the horse of a mounted police officer.  She asked several police officers to help her get medical assistance for her, but all refused.  As a result of the incident, the plaintiff suffered serious injuries which required surgery.

55.     Plaintiff SCOTT FITZGERALD: While attempting to participate in the demonstration on February 15, 2003, in the early afternoon, plaintiff FITZGERALD was  penned in by police on or about 53rd Street and 3rd Avenue, as a result of tactics, which were part of the policies of the Defendants CITY OF NEW YORK, KELLY, GRASSO JOSEPH ESPOSITO and MICHAEL ESPOSITO.  The plaintiff was consistently denied access by police to the rally as he tried to make his way to 1st Avenue.  Within approximately an hour,  mounted police officers aggressively rode into the crowd of protestors from 2nd Avenue.  The crowd of protestors were all on the sidewalk at this point.  Suddenly and without warning, and without any reasonable justification, three to four DOE/ROE defendants, unidentified police officers, attacked the plaintiff, grabbed him by the arms and legs and threw him to the ground.  The plaintiff was threatened, handcuffed unreasonably tightly and dragged to a police wagon where he was detained for several hours.  Plaintiff  was eventually transported to One Police Plaza with several other men who were arrested by police.  When he arrived at One Police Plaza, still shackled, he was forced to stand outside in extreme cold weather for several hours.  During his detention he was denied access to toilet facilities and was  denied water and food.  Defendant DOE/ROE police officers were unable to identify plaintiff's arresting officer.  Approximately  twelve hours after his arrest, the plaintiff was issued a citation for disorderly

conduct, by a non-arresting officer, and released.  All charges against the plaintiff were eventually dismissed.  At no time did the defendants have probable cause to arrest the plaintiff.

56.     Plaintiff JOHN CONNOR: While attempting to participate in the demonstration on February 15, 2003, at approximately 1:30 p.m., plaintiff was penned in by police officers on or about 54th Street and 2nd Avenue, as a result of tactics, which were part of the policies of the Defendants CITY OF NEW YORK, KELLY, GRASSO JOSEPH ESPOSITO and MICHAEL ESPOSITO.  The plaintiff was consistently denied access by police to the rally as he tried to make his way to 1st Avenue.  At approximately 2:00 p.m., on 2nd Avenue, while standing in front of a row of mounted police officers, the plaintiff witnessed one of the officers, who because he is unidentified is one of the DOE defendants,  back his horse into a female protestor, hurling her backwards into the crowd. The defendant, DOE police officer, then backed his horse into the plaintiff causing his right foot to be trampled by the horse.  The plaintiff was then grabbed by two DOE/ROE police officers and forced to the center of the intersection.  While in the intersection, several other DOE/ROE police officers joined in, threw the plaintiff to the ground, rubbed his face on the pavement and kneed him in the kidneys.  At no time did the plaintiff engage in unlawful activity.  He was handcuffed unreasonably tightly and taken to an overcrowded police wagon. He was eventually transported to 1 Police Plaza with several other men who had also been arrested by police.  He was shackled and kept out in the cold behind One Police Plaza for hours.  Police officers were unable to identify plaintiff's arresting officer.  Approximately twelve hours after his arrest, the plaintiff was given a citation by a non arresting officer, a DOE/ROE defendant, and released. During his detention he was denied access to toilet facilities and was denied water and food. At no time did the defendants have probable cause to arrest the plaintiff and all charges against the plaintiff have been dismissed.

57.     Plaintiff CARLOS SANCHEZ: While attempting to participate in the demonstration

on February 15, 2003, plaintiff was penned in by police on or about 54th Street and 2nd Avenue. The plaintiff was consistently denied access to the rally by the police as he tried to make his way to 1st Avenue, as a result of tactics, which were part of the policies of the Defendants CITY OF NEW YORK, KELLY, GRASSO JOSEPH ESPOSITO and MICHAEL ESPOSITO. While standing on the sidewalk, he was forbidden by police to leave the area at 2nd Avenue and 54th Street. At approximately 2:30 p.m., without warning, defendant DOE/ROE police officers aggressively moved into the crowd of protestors who were also being denied access to the demonstration site. The plaintiff was shoved by DOE/ROE police officers into crowds of people who also had no where to move. Plaintiff was grabbed by DOE/ROE officers and arrested. The crowd of protestors, including the plaintiff and those standing in his immediate vicinity, were all on the sidewalk at this time. The plaintiff was threatened, handcuffed unreasonably tightly and taken to a police wagon where he was detained for several hours. He was eventually transported to 1 Police Plaza with several other men who were arrested by police. He was shackled and kept out in the cold behind One Police Plaza for hours. Police officers were unable to identify plaintiff's arresting officer. Several hours after his arrest, the plaintiff was issued a citation by a non-arresting officer, another DOE/ROE defendant, and released. During his detention he was denied access to toilet facilities and was denied water and food. The plaintiff suffered injuries caused by the physical abuse of his arresting officers. All charges against the plaintiff have been dismissed. At no time did the defendants have probable cause to arrest the plaintiff.

58.     Plaintiff DELAINE DOUGLAS: While attempting to participate in the demonstration on February 15, 2003, at approximately 1:00 p.m., plaintiff was penned in, along with several other demonstrators, by police on or about 59th Street and 1st Avenue, as a result of tactics, which were part of the policies of the Defendants CITY OF NEW YORK, KELLY, GRASSO JOSEPH

ESPOSITO and MICHAEL ESPOSITO. She was continually denied access to 1st Avenue and, consequently, to the demonstration site. The plaintiff spoke to defendant, police officer Otero, requesting several times to be granted access onto 1st Avenue so that she could participate in the rally. While she was continually refused entry for approximately two hours, she was told by defendant officer Otero that she and other protestors would be allowed onto 1st Avenue at 4:00 p.m., only after the demonstration was over. At approximately 3:00 p.m., several DOE/ROE defendant police officers rushed the plaintiff and other demonstrators with whom she was standing. As a consequence, the plaintiff was pushed backward several feet and knocked to the ground. Defendant officer Otero yelled out to three other DOE/ROE defendant police officers, pointing to the plaintiff, "Yeah, get her, she's been asking for it." At that point, defendant officer Otero, along with other officers, grabbed the plaintiff's arms and legs and dragged her, on her back, to the middle of the street, striking her back on the pavement. The defendant DOE/ROE officers then flipped her over and one of them put a knee on her back and twisted her left arm up above her shoulder blade and cuffed her left wrist. They then dragged plaintiff to her feet, slammed her against a police car and pushed her head against the hood of the car while one of these unidentified defendants cuffed her right wrist. The plaintiff was then yanked off the hood of the car, handcuffed on both wrists and shoved into the back seat, in the course of which she hit her head on the door jam. During the arrest, defendant officers were yelling at the plaintiff, "You fucking anarchist, this is what you came for, this is what you get." The plaintiff was next taken to the 19th precinct, where she was booked and charged with disorderly conduct. On the way to the precinct she asked that the handcuffs be loosened because they were excessively and unreasonably tight and caused her severe pain.. This request was denied. Indeed, she remained cuffed during that time she was held at the precinct. One of the officers holding plaintiff at the precinct told her that there were NYPD officers opposed to the

way the demonstration and demonstrators were being handled, but the "big wigs (unidentified DOE/ROE supervisory defendants, herein) are forcing us to do this." The plaintiff remained at the precinct for approximately two more hours, was issued a citation for disorderly conduct and was then released. When leaving the station, she asked one of the precinct officers what her charges meant. He told her not to worry about it, it would probably be thrown out in court because the police weren't really interested in pursuing the charges, that "they" told "us" to go after the demonstrators and make arrests. The actions described above caused the plaintiff serious physical injuries, including, but not limited to bruises and musculo-skeletal injuries on her wrists, arms, thighs and back. The injuries to her back required medical treatment and physical therapy. All charges against the plaintiff have been dismissed. At no time did the defendants have probable cause to arrest the plaintiff.

59.     Plaintiff SARA PARKEL: While attempting to participate in the demonstration late in the afternoon on February 15, 2003 plaintiff was consistently denied access by police to the area of the demonstration, as she tried to make her way to 1st Avenue, as a result of tactics, which were part of the policies of the Defendants CITY OF NEW YORK, KELLY, GRASSO JOSEPH ESPOSITO and MICHAEL ESPOSITO. As she and other would be demonstrators walked along 39th Street, between 6th and 7th Avenues, several DOE/ROE defendant police officers blocked off the sidewalk underneath an area where there was scaffolding. The plaintiff, and other demonstrators with and near her, were not allowed to enter the street to get around police who were, by then, barricading the area, causing the plaintiff and others to be trapped. After they trapped the plaintiff and others under this scaffolding, defendant DOE/ROE police officers pushed the demonstrators up against the adjacent building and arrested them. The plaintiff was handcuffed and placed in a wagon with thirteen other female protestors. After approximately four hours, plaintiffs and the others were taken to the Javitz Center and eventually to the 7th Precinct. Because the defendants refused the

plaintiff, and her fellow arrestees, access to toilet facilities one of the group was forced to urinate on herself. Another detainee had an asthma attack during the transport.  At approximately 11:30 p.m., the plaintiff was locked in a cell at the 7th Precinct.  She made several requests to make a phone call, all of which were denied.   For the following eight hours she was interrogated by a detective who asked questions about the type of organizations the plaintiff was affiliated with.  At approximately 7 a.m. the following morning, she was issued a citation for disorderly conduct and released.  All charges against the plaintiff were eventually dismissed.  At no time did the defendants have probable cause to arrest the plaintiff.

60.     Plaintiff ABRAHAM BLAIR:  While attempting to participate in the demonstration on February 15, 2003, at approximately 1:00 p.m., plaintiff, who had come from the Port Authority was walking east on 42nd street toward 1st Avenue.  When the plaintiff got to 3rd Avenue he was forced by police to walk north on 3rd Avenue.  He walked north for several blocks, along with several other protestors, because police had blocked off all the east/west streets along 3rd Avenue.  Finally, at or about 65th Street, police officers permitted demonstrators to walk east, but only as far as 2nd Avenue. The plaintiff, along with several other demonstrators, was stopped by police from going any further east than 2nd Avenue.   Realizing the police were not going to allow demonstrators access to the rally, the plaintiff decided to head back to Port Authority to catch a bus home.   He took the subway from 59th and Lexington to Grand Central Station where he got off to walk the rest of the way to Port Authority.  It was approximately 3:30 p.m. when he arrived at the corner of 42nd Street and 7th Avenue.  It was very crowded in the area, most of the crowd being protestors who had attempted to attend the rally on 1st Avenue.  Several police officers were pushing the crowd along the sidewalk. The plaintiff, who was on the sidewalk, was being crushed and trampled by people because police were pushing and shoving the crowd so aggressively, as a result of tactics, which

were part of the policies of the Defendants CITY OF NEW YORK, KELLY, GRASSO JOSEPH

ESPOSITO and MICHAEL ESPOSITO.   While the police officers pushed the crowd, they also told

the people that they were not allowed to be on the sidewalk.  The plaintiff told one of the DOE/ROE

police officers, who was yelling and pushing people, that he had every right to be on the sidewalk

as he was just trying to make his way to the Port Authority to catch his bus home.  Suddenly, a very

large police officer, one of the DOE/ROEs grabbed the plaintiff and threw him to the ground.

Approximately five DOE/ROE police officers came over to the plaintiff while he was being held on

the ground, cuffed the plaintiff and placed him in a police van. Subsequently, he and other

demonstrators he was arrested with,  were transferred to the 7th Precinct. He was charged with

assaulting an officer and jailed for four days.  All charges against the plaintiff were eventually

dismissed.  At no time did the defendants have probable cause to arrest the plaintiff.

60.      Plaintiff WILLIAM SILVA, Jr.:  While attempting to participate in the demonstration on

February 15, 2003, at approximately 2:30 p.m., plaintiff was penned in by police on or about 53rd

Street and 3rd Avenue, as a result of tactics, which were part of the policies of the Defendants CITY

OF NEW YORK, KELLY, GRASSO JOSEPH ESPOSITO and MICHAEL ESPOSITO.  The

plaintiff was consistently denied access by police to the rally as he tried to make his way to 1st

Avenue.  As the plaintiff was standing on the sidewalk with other demonstrators, DOE/ROE police

officers rushed the crowd.  However, there was nowhere to go, in the face of this onslaught, since

the police had would not allow people to cross through on any of the streets running east and west.

Without warning, the plaintiff was approached and grabbed by defendant, POLICE OFFICER

KELLY, shield number 139.  Defendant POLICE OFFICER KELLY, along with several other

DOE/ROE police officers, grabbed the plaintiff and a few of the other demonstrators, dragged them,

and eventually threw them to the ground.  The plaintiff never resisted. With the full weight of his

body, defendant POLICE OFFICER KELLY applied so much pressure to the plaintiff's back that it became difficult for the plaintiff to breathe.  When he told the defendant POLICE OFFICER KELLY that he was having difficulty breathing, POLICE OFFICER KELLY bent the plaintiff's fingers backwards, with extreme force, causing him severe pain.  The plaintiffs arms were brutally twisted by the officer even after he was tightly handcuffed.  The plaintiff was then taken to a police bus with other demonstrators.  He was eventually transported to One Police Plaza with several other men who had been arrested by police.  He was shackled and kept out in the cold behind One Police Plaza for several hours. Defendant police officers were unable to identify plaintiff's arresting officer. After twelve hours from the time of his arrest, the plaintiff was issued a citation for disorderly conduct and released.  During his detention he was denied access to toilet facilities and was denied water and food.  The plaintiff suffered extreme pain and swelling to his fingers on his right hand and has developed nerve damage to both hands caused by the physical abuse of his arresting officers. All charges against the plaintiff were eventually dismissed.  At no time did the defendants have probable cause to arrest the plaintiff.

61.     Plaintiff MELVYN STEVENS: While attempting to participate in the demonstration on February 15, 2003, at approximately 2:30 p.m., plaintiff was penned in and trapped by police on or about 54th Street and 2nd Avenue, as a result of tactics, which were part of the policies of the Defendants CITY OF NEW YORK, KELLY, GRASSO JOSEPH ESPOSITO and MICHAEL ESPOSITO.   The plaintiff had been consistently denied access by police to the rally as he tried to make his way to 1st Avenue.  By approximately 2:30 p.m., while plaintiff was standing on 2nd Avenue, defendant DOE/ROE police officers aggressively rushed the  crowd in an attempt to force everyone onto the sidewalk.  However, the sidewalk was already so crowded with demonstrators that there was no room for the plaintiff, and the others with whom he had been standing, to move.

Suddenly, and without warning, defendant DOE/ROE police officers approached plaintiff, grabbed him, threw him to the ground and tightly handcuffed him, with excessive and unreasonable tightness. He was taken and to a police vehicle with several other protestors, who had also been arrested. He remained in that vehicle for several hours. He was eventually transported to One Police Plaza with several other men who were demonstrated and then arrested by police. He was shackled and forced him to stand outside, in the cold behind One Police Plaza, for hours. The plaintiff was told by police that they were unable to identify plaintiff's arresting officer. Twelve hours after his arrest, he was issued a citation by an officer and released. During his detention he was denied access to toilet facilities and was denied water and food. All charges against the plaintiff were eventually dismissed. At no time did the defendants have probable cause to arrest the plaintiff.

62. Plaintiff DON BRYANT: While attempting to participate in the demonstration on February 15, 2003, between approximately 10:30 a..m.and1:00 p.m., with thousands of other demonstrators, plaintiff walked up and down 2nd and 3rd Avenue sidewalks trying to access streets running east and west in an attempt to get to 1st Avenue where the rally was being held. The plaintiff was consistently denied access by police to the rally as he tried to make his way to 1st Avenue. At approximately 1:30 p.m., in the area of 54th street and 2nd Avenue, demonstrators began to overflow onto 2nd Avenue because there was no room left on the sidewalks on either side of 2nd Avenue due to the NYPD's closure of east/west streets. As a result of these tactics, which were part of the policies of the Defendants CITY OF NEW YORK, KELLY, GRASSO JOSEPH ESPOSITO and MICHAEL ESPOSITO, the plaintiff was trapped at 54th Street and 2nd Avenue and unable to leave the area. At approximately 2:00 p.m., defendant DOE/ROE mounted police officers aggressively rode into the crowd of demonstrators and other DOE/ROE police officers began grabbing demonstrators and arresting them for no reason. The plaintiff was one of the demonstrators who was

grabbed, handcuffed with excessive and unreasonable tightness.  He was then placed in a police van with others  who had been similarly arrested.  The plaintiff was eventually moved to another police van where police told them they were not able to identify their arresting officers. He was eventually transported by police to One Police Plaza with several other men who had been similarly  arrested. He was shackled and forced to stand out in the cold behind One Police Plaza for several hours. police officers were unable to identify plaintiff's arresting officer.  Twelve hours after his arrest, the plaintiff was issued a summons for disorderly conduct and released. During his detention he was denied access to toilet facilities and was denied water and food.   All charges against the plaintiff were eventually dismissed.  At no time did the defendants have probable cause to arrest the plaintiff.

63.     Plaintiff ROBERT DODDE: While attempting to participate in the demonstration on February 15, 2003, at approximately 2:30 p.m., after a couple of hours of attempting to get to the demonstration, was penned in and trapped by several police officers at or about the corner of 53rd Street and 3rd Avenue.  The plaintiff had consistently been denied access by police to the rally as he tried to make his way to 1st Avenue, as a result of tactics, which were part of the policies of the Defendants CITY OF NEW YORK, KELLY, GRASSO JOSEPH ESPOSITO and MICHAEL ESPOSITO.  At approximately 2:30 p.m., a contingent of mounted police officers aggressively rode into the crowd of demonstrators.  The crowd of demonstrators were being pushed by defendant DOE/ROE mounted police and officers clad in riot gear who were on foot.   The crowd of demonstrators were being crushed and trampled as police aggressively pushed the demonstrators up against the buildings along 3rd  Avenue, using the horses to push against steel barricades which, in turn, pushed and crushed the crowd of demonstrators, amongst whom the plaintiff was standing. The plaintiff, who remained on the sidewalk at all times, was approached by approximately six defendant

DOE/ROE police officers. He was dragged to the curb, his arms were forcefully twisted behind his back and he was handcuffed with excessive and unreasonable tightness.  The plaintiff was then thrown in front of a video camera where his face was recorded by a police officer.  The plaintiff was threatened, and then dragged to a police wagon where he was detained for several hours.  He was eventually transported to One Police Plaza with several other men who were similarly arrested by police. He was shackled and kept out in the cold behind One  Police Plaza for hours.  Defendant police officers were unable to identify plaintiff's arresting officer.  Twelve hours after his arrest the plaintiff was issued a summons by a DOE/ROE officer and/or supervisor alleging disorderly conduct.  During his detention he was denied access to toilet facilities and was denied water and food.  All charges against the plaintiff were eventually dismissed.  At no time did the defendants have probable cause to arrest the plaintiff.

64.    Plaintiff ADELE SPITZER:  While attempting to participate in the demonstration on February 15, 2003, at approximately 1:00 p.m., plaintiff, was penned in by police on or about 51st Street and 2nd Avenue, as a result of tactics, which were part of the policies of the Defendants CITY OF NEW YORK, KELLY, GRASSO JOSEPH ESPOSITO and MICHAEL ESPOSITO.   The plaintiff was consistently denied access by police to the rally as she tried to make her way to 1st Avenue. At approximately 1:30 p.m., DOE/ROE mounted police officers aggressively rode into the crowd of protestors, pushing demonstrators into one another.  Remaining on the sidewalk at all times, the plaintiff, a 66 year old psychologist, was suddenly assaulted by a DOE police officer who struck her across the back with his riot baton.  She attempted to remonstrate the police officer who struck her, but he then ran away.   The plaintiff approached a group of about twenty officers who were standing nearby.  She reported the incident to the officers, including one whose name, she noticed, was officer Conway.   Officer Conway told the plaintiff, "Look lady, if you know what's

good for you will just forget it." The plaintiff was never able to participate in the rally at 51st Street and 1st Avenue. As a result of the attack and assault by the police officer, the plaintiff suffers physical and psychological injuries.

65.     Plaintiff ALAIN De HALLEUX:   While attempting to participate in the demonstration on February 15, 2003, at approximately 11:45 a.m., was in the vicinity of the corner of 53rd Street and 3rd Avenue. He had been trying to make his way to the demonstration site but had been consistently denied access to the site by the defendants, as a result of tactics, which were part of the policies of the Defendants CITY OF NEW YORK, KELLY, GRASSO JOSEPH ESPOSITO and MICHAEL ESPOSITO. At or about 11:45 a.m., the defendants, without any prior notice, began to erect metal barricades on the east side of the intersection of 53rd Street and 3rd Avenue which were intended, it appeared, to act as a funnel to control the number of people who would be allowed by the defendants to go down 53rd Street in the direction of 2nd Avenue. The erection of the metal barricades created an immediate crush and the plaintiff, along with others, was forced up against the metal barricades in a manner which caused him to be in fear of being crushed by the crowd. In order to free himself from this dangerous situation, created by the defendants conduct of erecting the metal barricades in the middle of a crowd of demonstrators who were trying to make their way to the demonstration site, the plaintiff went around the barricade. The plaintiff was then arrested by defendant DETECTIVE HANNON, Shield No. 3655. During the arrest, the plaintiff was pulled backward, by defeendant HANNON, by a scarf that the plaintiff had around his neck.   Following his arrest, the plaintiff was taken to a police van where he sat, handcuffed, for several hours, before he was taken to One Police Plaza. At One Police Plaza he remained shackled and kept out in the cold behind One  Police Plaza for hours. Twelve hours after his arrest the plaintiff was released. During her detention she was denied access to toilet facilities and was denied water and food. The

handcuffs were put on so tight that plaintiff lost feeling in his thumb and forefinger of one of his hands. Although he complained that the handcuffs were too tight and were causing him extreme pain, the defendants never would loosen the cuffs. All charges against the plaintiff were eventually dismissed. At no time did the defendants have probable cause to arrest the plaintiff.

66. Plaintiff JASMINE DELLAL: While attempting to participate in the demonstration on February 15, 2003, at approximately 11:45 a.m., plaintiff was in the vicinity of the corner of 53rd Street and 3rd Avenue. She had been trying to make her way to the demonstration site but had been consistently denied access to the site by the defendants, as a result of tactics, which were part of the policies of the Defendants CITY OF NEW YORK, KELLY, GRASSO JOSEPH ESPOSITO and MICHAEL ESPOSITO. At or about 11:45 a.m., the DOE/ROE police officer and supervisor defendants, without any prior notice, began to erect metal barricades on the east side of the intersection of 53rd Street and 3rd Avenue which were intended, it appeared, to act as a funnel to control the number of people who would be allowed by the defendants to go down 53rd Street in the direction of 2nd Avenue. The erection of the metal barricade created an immediate crush and the plaintiff, along with others, was forced up against the metal barricades in a manner which caused her to be in fear of being crushed by the crowd. In order to free herself from this dangerous situation created by the defendants conduct of erecting the metal barricades in the middle of a crowd of demonstrators who were trying to make their way to the demonstration site, the plaintiff went around the barricade. The plaintiff was then arrested by defendant DETECTIVE HANNON, Shield No. 3655. During the arrest a camera that the plaintiff was carrying was damaged. Following her arrest, the plaintiff was taken to a police van where she sat, handcuffed, for several hours, before she was taken to One Police Plaza. At One Police Plaza she remained shackled and kept out in the cold behind One Police Plaza for hours. Twelve hours after her arrest, the plaintiff was released. During

her detention she was denied access to toilet facilities and was denied water and food.  All charges against the plaintiff were eventually dismissed.  At no time did the defendants have probable cause to arrest the plaintiff.

67.     Plaintiff EMILY VENIZELOS: Plaintiff actually got through and participated in the demonstration at 51st and 1st Avenue on September 15, 2002, although she had a great deal of difficulty actually getting to the site.  However, she was arrested for no reason and without any probable cause when she left the demonstration and while she was attempting to go home.  At approximately 3:30 p.m., the plaintiff found herself at 42nd Street near Times Square, where she was preparing to enter a subway entrance.  She was on the northeast corner of 42nd and Broadway when she ask a police officer if she could cross over to the southeast corner, where a subway entrance was located.  The police officer gave her permission to cross the street and she and three other friends proceeded across the street.  When she arrived at the southeast corner of 42nd and Broadway, another DOE/ROE police officer grabbed her, pushed her up against he wall of a building and threatened her.  One of her companion was thrown to the ground and set upon by up to ten officers.  Although she protested that she had been given permission to cross the street by another police officer, and that she was simply going to the subway entrance to go home, the plaintiff was arrested and handcuffed.  She remained handcuffed for three to four hours.  She was eventually taken to One Police Plaza, where she remained shackled and kept out in the cold behind One  Police Plaza for hours.  The plaintiff was detained for approximately 30 hours before she was released.  During her detention she was denied access to toilet facilities and was denied water and food.  She was also interrogated for some time by a police officer about her political activities and associations.  She was also subjected to an intrusive and unjustified search in that she was made to disrobe down to her underwear and was then asked to lift her underwear from her body.   The plaintiff went to trial in the Criminal Court,

New York County on the charges which were brought against her and she was found not guilty.  At

no time did the defendants have probable cause to arrest the plaintiff.  Yet she was arrested, as a

result of tactics, which were part of the policies of the Defendants CITY OF NEW YORK, KELLY,

GRASSO JOSEPH ESPOSITO and MICHAEL ESPOSITO.

**FIRST CLAIM FOR RELIEF**
**(42 U.S.C. § 1983)**

68.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 69 as if

fully set forth herein.

69.     By their conduct, as described herein, defendants are liable to the named

plaintiffs, and the members of the class they represent, 42 U.S.C. § 1983 for the violation, under

color of law, of their constitutional rights of freedom of speech, assembly, and association under

the First and Fourteenth Amendments to the United States Constitution; their constitutional right

to be free from unreasonable searches and seizures of their persons under the Fourth and

Fourteenth Amendments to the United States Constitution; their constitutional right to be free

from any deprivation of liberty or property without due process of law under Fifth and Fourteenth

Amendments to the United States Constitution.

**SECOND CLAIM FOR RELIEF**
**(Monell Claim Against the Municipal Defendants)**

70.     Plaintiff incorporate by reference the allegations set forth in every paragraph of

this complaint, as if fully set forth herein.

71.     At all times material to this complaint, the defendant CITY OF NEW YORK,

acting through its police department and its Police Commissioner defendant RAYMOND

KELLY as well as defendants GRASSO JOSEPH ESPOSITO and MICHAEL ESPOSITO and

the other high ranking defendants, had in effect de facto policies, practices, and customs as

articulated above that were a direct and proximate cause of the unconstitutional conduct of defendants

72.     As a direct and proximate result of the defendants' wrongful policies, practices, customs and/or usages complained of herein, the plaintiffs, as well as members of the plaintiff class, have suffered physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## THIRD CLAIM FOR RELIEF

73.     The plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 72 as if fully set forth herein.

74.     By the actions described above, each and all of the defendants, as well as the municipal defendant, jointly and severally, have committed the following wrongful acts against the plaintiffs, as well as members of the plaintiff class, which constitute wrongful conduct under the laws of the State of New York:

a.     Assault and battery on the plaintiffs and plaintiff class members;

b.     Trespass on the person of the plaintiffs and plaintiff class members;

c.     False imprisonment of the plaintiffs and plaintiff class members;

d.     Negligence in causing the injuries to plaintiffs and plaintiff class members;

e.     Intentional infliction of emotional distress upon the plaintiffs, and plaintiff class members, in that the defendants intended to and did cause the plaintiffs, and members of the plaintiff class, severe emotional distress, and that the defendants' acts were outrageous in the extreme and utterly unacceptable in a civilized society;

f.     Negligent hiring, screening, retention, supervision and training of defendant police officers by defendants City of New York;

g.      Conspiracy by the defendants to commit all of the above acts;

h.      Violation of rights otherwise guaranteed to the plaintiffs and members of the plaintiff class under the laws and Constitution of the State of New York.

75.      The foregoing acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and members of the plaintiff class and violated their statutory rights as guaranteed them by the Constitution of the State of New York.

### FOURTH CLAIM FOR RELIEF
### (Respondeat Superior Claim Under New York Law)

76.      Plaintiffs reallege and incorporate by reference paragraphs 1 through 75 as if fully set herein.

77.      The conduct of defendant police officers KELLY, GRASSO, JOSEPH ESPOSITO, MICHAEL ESPOSITO, OTERO, MILLENBACH, POLICE OFFICER KELLY, RYAN, HANNON, DOES and ROES,  occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as New York City police officers, and while they were acting as agents and employees of the defendants CITY OF NEW YORK and NEW YORK CITY POLICE DEPARTMENT.  Thus the defendant CITY OF NEW YORK is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

### PRAYER FOR RELIEF

WHEREFORE, the named plaintiffs and the other members of the class request relief as follows:

(a)      An order certifying this as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, certifying the named plaintiffs as class representatives, and designating Moore & Goodman, LLP, as Class Counsel;

(b)     Compensatory damages against the defendants jointly and severally; past and

future, including, but not limited to pain and suffering, emotional distress,

economic losses including lost wages and medical expenses, violation of rights

and other losses and injuries according to rpoof;

(c)     Punitive damages;

(d)     Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and;

(E)     Such other relief, as is just and proper under the circumstances.

## **JURY DEMAND**

Trial by jury is demanded on all issues for which a jury trial is available.

DATED:     July 1, 2003
                    New York, New York

_____
JONATHAN C. MOORE, Esq.  (JM-6902)
WILLIAM H. GOODMAN, Esq.  (WG - 1241)

MOORE & GOODMAN, LLP
740 Broadway - Fifth Floor
New York, New York  10003
(212) 353-9587

*Attorneys for the Plaintiffs and Members of
The Plaintiff Class*

*Of Counsel:*
Haddad & Sherwin
1300 Clay Street, Suite 600
Oakland, California 94612
(510) 622 - 7788